**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HITACHI MAXELL, LTD. | |
| Plaintiff, | |
| | CIVIL ACTION NO. _____ |
| v. | |
| TOP VICTORY ELECTRONICS (TAIWAN) CO. LTD., TPV INT'L (USA), INC., ENVISION PERIPHERALS, INC., TOP VICTORY ELECTRONICS (FUJIAN) CO. LTD., TPV ELECTRONICS (FUJIAN) CO. LTD., TPV TECHNOLOGY LTD., AND TPV DISPLAY TECHNOLOGY (XIAMEN) CO., LTD. | **JURY** |
| Defendants; | |

**COMPLAINT**

Plaintiff Hitachi Maxell, Ltd. ("Hitachi" or "Plaintiff") by way of this Complaint against

Defendants Top Victory Electronics (Taiwan) Co. Ltd., TPV Int'l (USA), Inc., Envision

Peripherals, Inc., Top Victory Electronics (Fujian) Co. Ltd., TPV Electronics (Fujian) Co. Ltd.,

TPV Technology Ltd., and TPV Display Technology (Xiamen) Co., Ltd. (collectively, ""TPV"

or "Defendants") alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement arising under the Patent Laws of the

United States, 35 U.S.C. § 101, *et seq.*

## THE PARTIES

2.      Plaintiff Hitachi Maxell, Ltd. is a corporation organized under the laws of Japan with its principal place of business at 1-1-8, Ushitora, Ibaraki-City, Osaka 567-8567, Japan.

3.      On information and belief, Defendant Top Victory Electronics (Taiwan) Co. Ltd. is a corporation organized under the laws of Taiwan with its principal place of business at 10F, No. 230, Liancheng Road, Zhonghe City, Taipei County, Taiwan.

4.      On information and belief, Defendant TPV Int'l (USA), Inc. is a corporation organized under the laws of California with its principal place of business at 3737 Executive Center Drive, Suite 261, Austin, Texas 78731, and with a registered agent at 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

5.      On information and belief, Defendant Envision Peripherals, Inc. is a corporation organized under the laws of California with its principal place of business at 47490 Seabridge Drive, Fremont, California 94538, and with a registered agent at 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

6.      On information and belief, Defendant Top Victory Electronics (Fujian) Co. Ltd. is a corporation organized under the laws of the People's Republic of China with its principal place of business at Shangzheng Yuanhong Road, Fuquing City, Fujian Province, China.

7.      On information and belief, Defendant TPV Electronics (Fujian) Co. Ltd. is a corporation organized under the laws of the People's Republic of China with its principal place of business at Shangzheng Yuanhong Road, Fuquing City, Fujian Province, China.

8.      On information and belief, TPV Technology Ltd. is a corporation organized under the laws of Bermuda with its principal place of business at Suite 1023, Ocean Centre, Harbour City, Kowloon, Hong Kong.

9.      On information and belief, TPV Display Technology (Xiamen) Co., Ltd. is a corporation organized under the laws of the People's Republic of China with its principal place of business at No.1, Xianghai Rd., (Xiang'An) Industrial Zone, Torch Hi-New Zon, Xiamen, Fujian, 350301 China.

10.     On information and belief, the companies identified in paragraphs 3-9 above (collectively, "TPV") are an interrelated group of companies that together comprise one of the world's largest manufacturers of televisions. TPV is a leading importer and seller of televisions in the United States.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over the subject matter of this Complaint under 28 U.S.C. §§ 1331 and 1338(a), because this action arises under the federal patent laws of the United States, including 35 U.S.C. § 271, *et seq*.

12.     This Court has personal jurisdiction over TPV in this action.  TPV knowingly and purposefully availed itself of the protections and benefits of the laws of the United States, the State of Texas, and this District.  For example, TPV availed itself of this District when, on November 11, 2010, it filed counterclaims in *Hitachi Consumer Electronics Co. Ltd., et al v. Top Victory Electronics* (Taiwan) Co. Ltd., et al. No. 2:10-cv-260 (E.D. Tex.), asserting actions for declaratory judgment of non-infringement and invalidity of certain patents, including patents asserted in the present Complaint.

13.     This Court also has personal jurisdiction over TPV in this action because TPV purposefully imports and/or sells the accused products in the United States and knowingly places them into the stream of commerce, with the intent and result that they are distributed and sold in the state of Texas and this District. For example, TPV has purposefully designed and manufactured televisions on behalf of Best Buy.  TPV sells these accused televisions to Best Buy and, in turn, Best Buy operates stores and sells the accused televisions within this District.  Thus, TPV has committed, induced, and/or contributed to acts of infringement within this District.

14.     Personal jurisdiction is additionally proper over defendant TPV Int'l (USA) Inc., because this entity conducts regular business within the state of Texas and operates an office in Austin, Texas.

15.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b), (c), and (d), as well as 28 U.S.C. § 1400(b), in that TPV is subject to personal jurisdiction in this District, and therefore is deemed to reside in this District for purposes of venue.  Additionally, as recited in the preceding paragraphs, TPV has knowingly committed acts that have resulted in infringement occurring within this District.

16.     Venue within this District is more convenient than in any other District.  TPV has previously litigated the majority of the asserted patents, and brought counterclaims against them, in this District.  This Court has previously become technically familiar with the majority of the asserted patents and issued a claim construction order construing their claim terms.  The inventors of the asserted patents and most of Plaintiff's documents reside in Japan.  TPV designs and manufactures the accused products in Taiwan and China, and thus most of Defendants'

witnesses and documents also reside overseas.  Thus, this District is no less convenient than other districts in the United States for purposes of discovery.

17.     The TPV defendants identified above operate as a unitary business venture and are jointly and severally liable for patent infringement relating to the televisions made, imported, offered for sale, sold, or used in the United States by any one of them.  Plaintiffs' right to relief against each of these defendants arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the importing, offering for sale, and sale of the same accused television units in the United States. Additionally, questions of fact common to all of these defendants will arise in this action, including whether these same television units infringe the asserted patents. Therefore, joinder of these TPV defendants is proper.

## THE PATENTS-IN-SUIT

18.     On March 14, 2000, U.S. Patent No. 6,037,995 (the '995 Patent") entitled BROADCASTING AND COMMUNICATION RECEIVER APPARATUS, was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '995 Patent is attached as Exhibit A to this Complaint.  Hitachi is the assignee and owner of the right, title, and interest in and to the '995 Patent, including the right to assert all causes of action arising under said patent, the right to recover damages for past, present, or future infringement of the patent, and the right to any other remedies for infringement of the patent.

19.     On May 14, 2002, U.S. Patent No. 6,388,713 ("the '713 Patent"), entitled IMAGE DISPLAY APPARATUS, AND METHOD TO PREVENT OR LIMIT USER ADJUSTMENT OF DISPLAYED IMAGE QUALITY, was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '713 Patent is attached as Exhibit B to this

Complaint.  The '713 Patent was initially issued jointly to Hitachi, Ltd. and Hitachi Video and

Information Systems, Inc.  By assignment, Hitachi Maxell, Ltd. is the sole owner of the right,

title, and interest in and to the '713 Patent, including the right to assert all causes of action

arising under said patent, the right to recover damages for past, present, or future infringement of

the patent, and the right to any other remedies for infringement of the patent.

20.     On November 7, 2000, United States Letters Patent No. 6,144,412 ("the '412

Patent"), entitled METHOD AND CIRCUIT FOR SIGNAL PROCESSING OF FORMAT

CONVERSION OF PICTURE SIGNAL, was duly and legally issued by the United States Patent

and Trademark Office.  A true and correct copy of the '412 Patent is attached as Exhibit C to this

Complaint.  Hitachi is the assignee and owner of the right, title, and interest in and to the '412

Patent, including the right to assert all causes of action arising under said patent, the right to

recover damages for past, present, or future infringement of the patent, and the right to any other

remedies for infringement of the patent.

21.     On August 30, 2011, U.S. Patent No. 8,009,375 ("the '375 Patent") entitled

"APPARATUS AND METHOD FOR RECEIVING AND RECORDING DIGITAL

INFORMATION," was duly and legally issued by the United States Patent and Trademark

Office.  A true and correct copy of the '375 Patent is attached hereto as Exhibit D to this

Complaint.  Hitachi is the assignee and owner of the right, title, and interest in and to the '375

Patent, including the right to assert all causes of action arising under said patent, the right to

recover damages for past, present, or future infringement of the patent, and the right to any other

remedies for infringement of the patent.

22.     On April 12, 2011, U.S. Patent No. 7,924,366 ("the '366 Patent") entitled "IMAGE DISPLAYING APPARATUS," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '366 Patent is attached hereto as Exhibit E to this Complaint.  Hitachi is the assignee and owner of the right, title, and interest in and to the '366 Patent, including the right to assert all causes of action arising under said patent, the right to recover damages for past, present, or future infringement of the patent, and the right to any other remedies for infringement of the patent.

23.     On December 16, 2014, U.S. Patent No. 8,913,197 (the '197 Patent) entitled "DIGITAL BROADCAST RECEIVER UNIT," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '197 Patent is attached hereto as Exhibit F to this Complaint.  Hitachi is the assignee and owner of the right, title, and interest in and to the '197 Patent, including the right to assert all causes of action arising under said patent, the right to recover damages for past, present, or future infringement of the patent, and the right to any other remedies for infringement of the patent

## PROCEDURAL HISTORY

23.     On April 28, 2009, Hitachi, Ltd. sent Mr. Jason Hsuan, the Chairman and Chief Executive Officer of TPV, a letter asserting the TPV was infringing the '995, '713, and other patents and that TPV needed a license.

24.     Between April 2009 and April 2010, Hitachi, Ltd. and its licensing agent, Inpro Licensing, attempted numerous times to engage TPV in substantive good faith patent licensing discussions.  TPV refused to participate or cooperate in such discussions.

25.     Without warning, on April 14, 2010, TPV filed a Declaratory Judgment action against Hitachi, Ltd. in the Northern District of California, Case No. 3:10-cv-01579, seeking declarations of non-infringement and invalidity as to the '995, '713, and other patents.  The case was dismissed without any rulings on the merits.

26.     On July 22, 2010, Hitachi Consumer Electronics and Hitachi Advanced Digital filed a complaint against TPV in the Eastern District of Texas, Case No. 2:10-cv-260, alleging infringement of the '995, '713, '412, and other patents.  On May 3, 2012, Hitachi Consumer Electronics filed a new Complaint against TPV in the Eastern District of Texas asserting the '375 Patent and initiating Case No. 2:12-cv-00268.   On June 5, 2012, an amended complaint was filed asserting the '375 Patent against TPV and adding it to Case No. 2:10-cv-260.   On June 7, 2012, Case No. 2:12-cv-00268 was dismissed without prejudice.  In Case No. 2:10-cv-260, the Court issued a claim construction order for these and other patents, and the case progressed through and completed fact and expert discovery.  On April 8, 2013, prior to trial, the '995, '713, and '412 patents were severed into new Case No. 2:13-cv-00264.  On April 16, 2013, these patents were dismissed from the new case "without prejudice."  TPV did not appeal either the order severing the patents or the order dismissing them without prejudice.

27.     Trial was conducted April 8-12, 2013, as to claims 26 and 30 of the '375 patent. These two claims were asserted and tried exclusively against the ATSC functionality of the accused televisions.  On September 19, 2013, the Court entered a final judgment of non-infringement and invalidity with respect to claims 26 and 30 of the '375 patent.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,037,995

28.     Plaintiff repeats and reallege the allegations of the preceding paragraphs as if set forth herein.

29.     TPV was provided with actual notice of infringement pursuant to 35 U.S.C. § 287(a) no later than April 28, 2009, when the patent owner transmitted a letter to TPV identifying the '995 patent, identifying accused products, and asserting that there was infringement that required a license.

30.     TPV has directly infringed, either literally or under the doctrine of equivalents, claim 1 of the '995 patent under 35 U.S.C. § 271(a) by importing, selling, and/or offering to sell televisions in the United States that embody claim 1.  Such televisions include, by way of non-limiting example, the NEC E421, Insignia NS-46E480A13, Haier LE46D2380, and AOC LE24H067.

31.     TPV has indirectly infringed, either literally or under the doctrine of equivalents, claim 1 of the '995 patent under 35 U.S.C. § 271(b) by inducing end users to use the accused televisions in an infringing manner.  By way of example, with full knowledge of the '995 Patent and intent to cause infringement, TPV provides instructions and encouragement to end users on how to display an on-screen guide or menu that results in the use of an apparatus covered by claim 1.  Further, TPV's end users have, in fact, directly infringed by using the invention of claim 1.

32.     Additionally, TPV has indirectly infringed, either literally or under the doctrine of equivalents, claim 1 of the '995 patent under 35 U.S.C. § 271(b) by inducing third-parties to import, sell, or offer to sell TPV televisions that embody claim 1 in the United States.  More

particularly, with full knowledge of the '995 Patent and intent to cause infringement, TPV has manufactured accused televisions overseas with full knowledge and intent that such televisions will be imported, sold, or offered for sale in the United States. This intent is demonstrated at least by TPV designing and manufacturing the televisions to be compliant with Federal Communication Commission (FCC) requirements, obtaining Underwriters Laboratories (UL) certification for the televisions, making the televisions compatible with ATSC broadcast standards used in the United States, providing written instructions and on-screen displays in English, and by making the televisions compatible with U.S. power requirements.  TPV has encouraged third parties to import and/or sell the accused televisions in the United States at least by entering into contractual relationships with them and by assisting them with the movement of TPV-made televisions through importation and distribution channels into and within the United States. Third-parties have, in fact, imported, sold, and/or offered to sell the accused TPV-made televisions in the United States. Such third parties include, by way of example, TPV customers such as NEC, Haier, and Best Buy.

33.     TPV's infringement has been and continues to be deliberate and willful. TPV has been aware of the '995 Patent since no later than April 28, 2009, and has received, *inter alia*, detailed information, including expert reports, specifically describing how TPV televisions infringe.  Thus, TPV's conduct has been objectively reckless, and TPV has possessed subjective intent to infringe the patent.

34.     Hitachi has been harmed by TPV's infringing activities and is entitled to recover monetary damages, including ongoing royalties.  Further, any damages award should be trebled in view of TPV's willful infringement.

35.     On information and belief, TPV will continue its infringing activities and continue to damage Hitachi unless enjoined by this Court.  Hitachi has no adequate remedy at law.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 6,388,713

36.     Plaintiff repeats and reallege the allegations of the preceding paragraphs as if set forth herein.

37.     TPV was provided with actual notice of infringement pursuant to 35 U.S.C. § 287(a) no later than April 28, 2009, when the patent owner transmitted a letter to TPV identifying the '713 patent, identifying accused products, and asserting that there was infringement that required a license.

38.     TPV has directly infringed, either literally or under the doctrine of equivalents, one or more claims of the '713 patent under 35 U.S.C. § 271(a) by importing, selling, and/or offering to sell televisions in the United States that embody the claimed inventions.  Such televisions include, by way of non-limiting example, the NEC E421, Insignia NS-46E480A13, Haier LE46D2380, and AOC LE24H067.

39.     TPV has indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '713 patent under 35 U.S.C. § 271(b) by inducing end users to use the accused televisions in an infringing manner.  By way of example, with full knowledge of the '713 Patent and intent to cause infringement, TPV provides instructions and encouragement to end users on how to display an on-screen guide or menu and to adjust picture settings such as brightness or contrast that results in the use of an apparatus covered by one or more claims of the '713 Patent.  Further, TPV's end users have, in fact, directly infringed by using the inventions claimed in the '713 Patent.

40.     Additionally, TPV has indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '713 patent under 35 U.S.C. § 271(b) by inducing third-parties to import, sell, or offer to sell TPV televisions that embody the claimed inventions in the United States.  More particularly, with full knowledge of the '713 Patent and intent to cause infringement, TPV has manufactured accused televisions overseas with full knowledge and intent that such televisions will be imported, sold, or offered for sale in the United States. This intent is demonstrated at least by TPV designing and manufacturing the televisions to be compliant with Federal Communication Commission (FCC) requirements, obtaining Underwriters Laboratories (UL) certification for the televisions, making the televisions compatible with ATSC broadcast standards used in the United States, providing written instructions and on-screen displays in English, and by making the televisions compatible with U.S. power requirements.  TPV has encouraged third parties to import and/or sell the accused televisions in the United States at least by entering into contractual relationships with them and by assisting them with the movement of TPV-made televisions through importation and distribution channels into and within the United States. Third-parties have, in fact, imported, sold, and/or offered to sell the accused TPV-made televisions in the United States. Such third parties include, by way of example, TPV customers such as NEC, Haier, and Best Buy.

41.     TPV's infringement has been and continues to be deliberate and willful. TPV has been aware of the '713 Patent since no later than April 28, 2009, and has received, *inter alia*, detailed information, including expert reports, specifically describing how TPV televisions infringe.  Thus, TPV's conduct has been objectively reckless, and TPV has possessed subjective intent to infringe the patent.

42.     Hitachi has been harmed by TPV's infringing activities and is entitled to recover monetary damages, including ongoing royalties.  Further, any damages award should be trebled in view of TPV's willful infringement.

43.     On information and belief, TPV will continue its infringing activities and continue to damage Hitachi unless enjoined by this Court.  Hitachi has no adequate remedy at law.

## COUNT III –INFRINGEMENT OF U.S. PATENT NO. 6,144,412

44.     Plaintiff repeats and reallege the allegations of the preceding paragraphs as if set forth herein.

45.     TPV was provided with actual notice of infringement pursuant to 35 U.S.C. § 287(a) no later than July 22, 2010, when the patent was asserted against TPV through the filing of a Complaint in Case No. 2:20-cv-260-JRG.

46.     TPV has directly infringed, either literally or under the doctrine of equivalents, one or more claims of the '412 patent under 35 U.S.C. § 271(a) by importing, selling, and/or offering to sell televisions and monitors in the United States that embody the claimed inventions. Such televisions include, by way of non-limiting example, the NEC E321, Insignia NS-32E320A13, Haier L32C1120, and AOC L32W961.  Such monitors include, by way of non-limiting example, the NEC X554UN.

47.     TPV has indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '412 patent under 35 U.S.C. § 271(b) by inducing end users to use the accused products in an infringing manner.  By way of example, with full knowledge of the '412 Patent and intent to cause infringement, TPV provides instructions and encouragement to end users on how to use the televisions and monitors to receive video signals having different

formats and aspect ratios, wherein these products scale, deinterlace, perform color space conversion, and/or provide gamma conversion in a manner that practices one or more claims of the '412 Patent.   Further, TPV's end users have, in fact, directly infringed by using the inventions claimed in the '412 Patent.

48.     Additionally, TPV has indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '412 patent under 35 U.S.C. § 271(b) by inducing third-parties to import, sell, or offer to sell TPV televisions and monitors that embody the claimed inventions in the United States.  More particularly, with full knowledge of the '412 Patent and intent to cause infringement, TPV has manufactured the accused televisions and monitors overseas with full knowledge and intent that they will be imported, sold, or offered for sale in the United States. This intent is demonstrated at least by TPV designing and manufacturing the televisions and monitors to be compliant with Federal Communication Commission (FCC) requirements, obtaining Underwriters Laboratories (UL) certification for the televisions, providing written instructions and on-screen displays in English, and by making the televisions and monitors compatible with U.S. power requirements.  Further, in the case of televisions, TPV designed and manufactured them to be compatible with the ATSC broadcast standard used in the United States.  TPV has encouraged third parties to import and/or sell the accused televisions and computer monitors in the United States at least by entering into contractual relationships with them and by assisting them with the movement of these products through importation and distribution channels into and within the United States. Third-parties have, in fact, imported, sold, and/or offered to sell the accused products in the United States. Such third parties include, by way of example, TPV customers such as NEC, Haier, and Best Buy.

49.     Additionally, TPV has indirectly infringed, either literally or under the doctrine of equivalents, one or more claims of the '412 patent under 35 U.S.C. § 271(c) by offering to sell, selling within the United States, or importing into the United States televisions and monitors for use in practicing one or more claims of the '412 Patent.  For example, with full knowledge of the '412 Patent and intent to cause infringement, TPV has sold and imported televisions and monitors that included deinterlacers, scalers, input interfaces (*e.g.*, HDMI, DVI, VGA) compatible with interlaced video signals, and/or stored EDID data indicating the products' ability to receive interlaced signals.  Thus, TPV has knowingly sold and imported accused products especially adapted for infringing the '412 Patent.  Further, televisions and monitors possessing the foregoing components have no substantial non-infringing use other than to use the foregoing components in an infringing manner.  Televisions and monitors are not staple items of commerce.  TPV's customers and/or end users have in fact used the accused products in an infringing manner.

50.     TPV's infringement has been and continues to be deliberate and willful. TPV has been aware of the '412 Patent since no later than July 22, 2010, and has received, *inter alia*, detailed information, including expert reports, specifically describing how TPV products infringe.  Thus, TPV's conduct has been objectively reckless, and TPV has possessed subjective intent to infringe the patent.

51.     Hitachi has been harmed by TPV's infringing activities and is entitled to recover monetary damages, including ongoing royalties.  Further, any damages award should be trebled in view of TPV's willful infringement.

52.     On information and belief, TPV will continue its infringing activities and continue to damage Hitachi unless enjoined by this Court.  Hitachi has no adequate remedy at law.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 8,009,375**

53.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

54.     TPV was provided with actual notice of infringement pursuant to 35 U.S.C. § 287(a) no later than May 3, 2012, when the '375 Patent was asserted against TPV through the filing of a complaint in Case No. 2:12-cv-268-JRG.

55.     Subsequent to the jury trial in Case No.2:10-cv-00260-JRG, TPV began manufacturing, importing, and selling televisions that include a Mobile High-Definition Link (MHL) interface and that were marketed and sold as having "Roku Ready" functionality. The term "Roku Ready" refers to the fact that the televisions were designed and configured to receive a Roku Streaming Stick distributed and sold by Roku, Inc., wherein the Roku Streaming Stick is connected to the television's MHL interface and provides video programming via various streaming services offered on the Internet, including Netflix, Hulu Plus, Amazon Instant Video, and YouTube, among others.

56.     The Roku Streaming Stick includes a radio frequency receiver for receiving a streaming program via a Wi-Fi access point.  It also includes a demodulator for demodulating at least CCK/DSSS and OFDM signals.  Video information may be received by the Roku Streaming Stick as part of an MPEG Transport Stream (TS).  The streaming video information is contained in PES packets that are capable of including 16 bits of error detection information per ISO/IEC 13818-1 § 2.4.3.7.  The streaming video is also contained in TCP/IP packets that

contain an additional 16 bits of error detection information.  Further, in the case of video information compressed using H.264, error detection information is further added in the form of redundant slices.   Similarly, audio information may be contained in PES packets having 16 bits of error detection information and TCP/IP packets having another 16 bits of error detection information.  Additionally, audio encoded using AAC includes or is capable of including further error detecting codes at the elementary stream/codec level.  Thus, the Roku Streaming Stick includes one or more error detectors that utilize the error detection information added separately to the video and audio information.  The Roku Streaming stick is capable of receiving video streams compressed using the H.264 or VC-1 codecs, and thus includes a video information expander.  Similarly, the Roku Streaming stick is capable of receiving audio streams compressed using AAC, MP3, or WMA codecs, and thus includes an audio information expander.  In view of the foregoing, the Roku Streaming Stick includes all of the limitations of claim 1 of the '375 patent.

57.     The accused TPV televisions include, but are not limited to, those televisions that possess an MHL interface and Roku Ready functionality.  TPV televisions further include an IR port and/or system-on-a-chip for detecting and processing control signals received by the television's remote control.  Such control signals include those that control recording and playback of streaming video and audio information that is received and buffered by the Roku Streaming Stick.  The accused televisions also includes a parity addition circuit for adding parity data (*e.g.*, TERC4) to the control signal information for forwarding to the Roku Streaming Stick via the MHL interface.   In view of the foregoing, the TPV televisions include all the limitations recited in claims 31 and 32 of the '375 patent.  As a result, a TPV television in combination with

a Roku Streaming Stick comprises an infringing apparatus that meets all the limitations of claims 31, and 32.  Accused TPV televisions include, but are not limited to, the Insignia NS-40D510NA15.

58.     TPV has indirectly infringed, either literally or under the doctrine of equivalents, claims 31 and 32 of the '375 patent under 35 U.S.C. § 271(b) by inducing its customers and end users to use the accused televisions in an infringing manner.  By way of example, with full knowledge of the '375 Patent and intent to cause infringement, TPV provides written instructions and encouragement to end users on where to purchase the Roku Streaming Stick, how to combine the Roku Streaming Stick with the TPV television, how to use the Roku Streaming Stick in combination with the television, and how to use the television's remote control to control recording and playback of a movie or show by the Roku Streaming Stick.  TPV's customers and end users have, in fact, directly infringed by combining and using the TPV television and the Roku Streaming Stick.

59.     TPV has also committed contributory infringement, either literally or under the doctrine of equivalents, of claims 31 and 32 of the '375 patent under 35 U.S.C. § 271(c) by importing, selling, and/or offering to sell in the United States televisions that possess Roku Ready functionality that have no substantial non-infringing use other than to combine the television with a Roku Streaming Stick to create an infringing apparatus. Further, televisions that include Roku Ready functionality are not staple items of commerce.  In addition, TPV knew that the televisions with Roku Ready functionality were especially made and adapted to use the claimed inventions of the '375 Patent. Customers and end users of the accused TPV televisions

have combined the TPV televisions with a Roku Streaming Stick and used the Roku

functionality in a manner that practices claims 31 and 32 of the '375 Patent.

60.     TPV has also directly infringed, either literally or under the doctrine of

equivalents, claims 31 and 32 of the '375 Patent under 35 U.S.C. § 271(a) by, among other

things, offering to sell, selling, or importing ATSC televisions that include ATSC receivers

together with HDMI ports possessing audio return channel (ARC) and/or Consumer Electronics

Control (CEC) capabilities. Such ATSC televisions include, but are not limited to, the Insignia

NS-40D510NA15.

61.     Additionally, TPV has indirectly infringed, either literally or under the doctrine of

equivalents, one or more claims of the '375 patent under 35 U.S.C. § 271(b) by inducing third-

parties to import, sell, or offer to sell TPV televisions that embody the claimed inventions in the

United States.  More particularly, with full knowledge of the '375 Patent and intent to cause

infringement, TPV has manufactured accused televisions overseas with full knowledge and

intent that such televisions will be imported, sold, or offered for sale in the United States. This

intent is demonstrated at least by TPV designing and manufacturing the televisions to be

compliant with Federal Communication Commission (FCC) requirements, obtaining

Underwriters Laboratories (UL) certification for the televisions, making the televisions

compatible with ATSC broadcast standards used in the United States, providing written

instructions and on-screen displays in English, and by making the televisions compatible with

U.S. power requirements.  TPV has encouraged third parties to import and/or sell the accused

televisions in the United States at least by entering into contractual relationships with them and

by assisting them with the movement of TPV-made televisions through importation and

distribution channels into and within the United States. Third-parties have, in fact, imported, sold, and/or offered to sell the accused TPV-made televisions in the United States. Such third parties include, by way of example, TPV customers such as NEC, Haier, and Best Buy.

62.     TPV's infringement has been deliberate and willful. TPV has been aware of the '375 Patent since no later than May 3, 2012, when it was asserted against TPV via a complaint in Case No. 2:12-cv-00268. TPV's conduct has been objectively reckless, and TPV has possessed subjective intent to infringe the patent.

63.     Hitachi has been harmed by TPV's infringing activities and is entitled to recover monetary damages.  Further, any damages award should be trebled in view of TPV's willful infringement.

**COUNT V – INFRINGEMENT OF U.S. PATENT NO. 8,913,197**

64.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

65.     TV has had knowledge and actual notice of the '197 Patent no later than the filing date of the instant Complaint.

66.     TPV is directly infringing, either literally or under the doctrine of equivalents, one or more claims of the '197 Patent under 35 U.S.C. § 271(a) by importing, selling, and/or offering to sell televisions in the United States that embody the claimed inventions.  Such televisions include, by way of non-limiting example, the Insignia NS-40D510NA15.

67.     On information and belief, TPV will continue to indirectly infringe, either literally or under the doctrine of equivalents, one or more claims of the '197 Patent under 35 U.S.C. § 271(b) by inducing customers and end users to use the accused televisions in an infringing

manner.  By way of example, with knowledge of the '197 Patent and intent to cause

infringement, TPV is, and will continue to, provide instructions and encouragement to customers

and end users on how to use the television to receive multiplexed video signals having different

formats and/or aspect ratios, wherein the televisions demultiplex the video signals and provide

scaling and/or deinterlacing processing in a manner that practices one or more claims of the '197

Patent.  Further, TPV's customers end users are, in fact, directly infringing by using the

inventions claimed in the '197 Patent.

68.     Additionally, on information and belief, TPV will continue to indirectly infringe,

either literally or under the doctrine of equivalents, one or more claims of the '197 Patent under

35 U.S.C. § 271(b) by inducing third-parties to import, sell, or offer to sell TPV televisions that

embody the claimed inventions in the United States.  More particularly, with full knowledge of

the '197 Patent and intent to cause infringement, TPV is, and will continue to, manufacture

accused televisions overseas with full knowledge and intent that such televisions will be

imported, sold, or offered for sale in the United States. This intent is demonstrated at least by

TPV designing and manufacturing the televisions to be compliant with Federal Communication

Commission (FCC) requirements, obtaining Underwriters Laboratories (UL) certification for the

televisions, making the televisions compatible with ATSC broadcast standards used in the United

States, providing written instructions and on-screen displays in English, and by making the

televisions compatible with U.S. power requirements.  TPV has encouraged third parties to

import and/or sell the accused televisions in the United States at least by entering into contractual

relationships with them and by assisting them with the movement of TPV-made televisions

through importation and distribution channels into and within the United States. Third-parties

are, in fact, importing, selling, and/or offering to sell the accused TPV-made televisions in the

United States. Such third parties include, by way of example, TPV customers such as NEC,

Haier, and Best Buy.

69.     On information and belief, TPV's infringement will continue in a deliberate and

willful manner.

70.     Hitachi is being harmed by TPV's infringing activities and is entitled to recover

monetary damages, including ongoing royalties.  Further, any damages award should be trebled

in view of TPV's willful infringement.

71.     On information and belief, TPV will continue its infringing activities and continue

to damage Hitachi unless enjoined by this Court.  Hitachi has no adequate remedy at law.

### COUNT VI - INFRINGEMENT OF U.S. PATENT NO. 7,924,366

70.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set

forth herein.

71.     TV has had knowledge and actual notice of the '366 Patent no later than the filing

date of the instant Complaint.

72.     TPV directly infringes, either literally or under the doctrine of equivalents, one or

more claims of the '366 Patent under 35 U.S.C. § 271(a) by importing, selling, and/or offering to

sell televisions in the United States that embody the claimed inventions.  Such televisions

include, by way of non-limiting example, the Insignia NS-40D510NA15 and NEC E424.

73.     Additionally, TPV indirectly infringes, either literally or under the doctrine of

equivalents, one or more claims of the '366 Patent under 35 U.S.C. § 271(b) by inducing third-

parties to import, sell, or offer to sell TPV televisions that embody the claimed inventions in the

United States.  More particularly, with knowledge of the '366 Patent and intent to cause

infringement, TPV is, and will continue to, manufacture the accused televisions overseas with

full knowledge and intent that such televisions will be imported, sold, or offered for sale in the

United States. This intent is demonstrated at least by TPV designing and manufacturing the

televisions to be compliant with Federal Communication Commission (FCC) requirements,

obtaining Underwriters Laboratories (UL) certification for the televisions, making the televisions

compatible with ATSC broadcast standards used in the United States, providing written

instructions and on-screen displays in English, and by making the televisions compatible with

U.S. power requirements.  TPV has encouraged third parties to import and/or sell the accused

televisions in the United States at least by entering into contractual relationships with them and

by assisting them with the movement of TPV-made televisions through importation and

distribution channels into and within the United States. Third-parties have, in fact, imported,

sold, and/or offered to sell the accused TPV-made televisions in the United States. Such third

parties include, by way of example, TPV customers such as NEC, Haier, and Best Buy.

74.     On information and belief, TPV's infringement will continue in a deliberate and

willful manner.

75.     Hitachi is being harmed by TPV's infringing activities and is entitled to recover

monetary damages, including ongoing royalties.  Further, any damages award should be trebled

in view of TPV's willful infringement.

76.     On information and belief, TPV will continue its infringing activities and continue

to damage Hitachi unless enjoined by this Court.  Hitachi has no adequate remedy at law.

## JURY DEMAND

77.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment for itself and against Defendants as follows:

a.     that this Court adjudge that TPV has infringed each of the '995, '713, '412, '375, '197, and '366 Patents;

b.     that this Court adjudge that TPV's infringement of the '995, '713, '412, '375, '197, and '366 Patents has been willful;

c.     that this Court ascertain and award Hitachi damages sufficient to compensate for TPV's infringement, including but not limited to infringement occurring before the filing of this lawsuit;

d.     that this Court ascertain and award Hitachi any post-judgment on-going royalties as may be appropriate;

e.     that this Court treble any damages and on-going royalties pursuant to 35 U.S.C. § 284 in view of TPV's willful infringement;

f.     that this Court  award any applicable pre-judgment and post-judgment interest;

g.     that this Court find this case to be exceptional pursuant to 35 U.S.C. § 285 and award Hitachi its attorneys fees, costs and expenses in this action;

h.      that this Court issue an injunction, enjoining TPV and its officers, agents, servants and employees, privies, and all persons in active concert or participation with it, from further infringement of said patents; and

i.      that this Court award Hitachi such other relief as the Court may deem just and proper.

DATED:  December 16, 2014                     Respectfully submitted,

                                              */s/ Jeffrey B. Plies*
                                              Martin J. Black - **LEAD ATTORNEY**
                                              (Pro Hac Vice Pending)
                                              martin.black@dechert.com
                                              DECHERT LLP
                                              Cira Centre
                                              2929 Arch Street
                                              Philadelphia, PA 19104
                                              (215) 994-4000

                                              Jeffrey B. Plies
                                              TX Bar No. 24027621
                                              jeffrey.plies@dechert.com
                                              DECHERT LLP
                                              300 W. 6th Street
                                              Suite 2010
                                              Austin, TX 78701
                                              (512) 394-3000

                                              ***Attorneys for Hitachi Maxell, Ltd.***

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this notice was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3)(A), on December 16, 2014.

*/s/ Jeffrey B. Plies*
Jeffrey B. Plies